Daniel, J.
delivered the opinion of the court.
jn addition to the four regular counts in the indictment for burglary and larceny, there is also the further charge or allegation that the prisoner “hath been convicted of a felony by him committed in the commonwealth of Massachusetts, one of the United States, and therefor sentenced to confinement' in the penitentiary of the said commonwealth of Massachusetts, one of the United States.”
On the trial, the prisoner having been regularly arraigned, and haying pleaded not guilty, the prosecution, after it had introduced evidence for the purpose of sustaining the allegations contained in the indictment, then exhibited two records, one of which showed that John W. Rand had, at the November term of the Municipal court of the city of Boston in 1843, been convicted of larceny, and sentenced therefor to confinement in the penitentiary of the state of Massachusetts for the space of four years; and the other, that on an appeal before the Supreme judicial court, the said conviction and sentence had been regularly affirmed in the year 1844; and also introduced a witness, by whom it offered to prove that the prisoner was the same person named in the said records. To the introduction of this evidence the prisoner objected; but the court overruled the objection, and permitted the said records and proof of the identity of the prisoner to go to the jury; and the prisoner excepted.
The questions to be decided here all turn on the propriety or impropriety of permitting the introduction of this evidence.
From an early period in the history of our penal code, indeed from the date of the establishment of the penitentiary, it has been the policy of our law to visit *741 with increased punishment offenders who shall be convicted and sentenced for felonies committed, after having been once or oftener convicted and sentenced for like offences. Previously, however, to the revision of the criminal laws in 1848, the provisions for increased or additional punishment for second offences or convictions, only reached those cases where the accused had been before sentenced by some court in this state. In 1848 the law in this respect was changed, and the additional punishment prescribed for the second conviction made to extend to cases where the first conviction had been made in a court of any other of the United States. The law of 1848, with some slight change in its phraseology, is embodied in the code of 1849, and is to be found in the 25th section of chapter 199. It declares that “when any person is convicted of an offence, and sentenced to confinement therefor in the penitentiary, and it is alleged in the indictment on which he is convicted, and admitted, or by the jury found, that he had been before sentenced in the United States to a like punishment, he shall be sentenced to be confined five years, in addition to the time to which he is or would be otherwise sentenced.” The exhibition of the charge, that the prisoner had been before convicted and sentenced in Massachusetts, and the offer to sustain the charge by proof, were doubtless designed on the part of the prosecution to be in pursuance of this law.
The effort on the part of the prisoner’s counsel to sustain Ms exception to the course of the court in regard to tliis portion of the prosecution, is placed mainly on three grounds :
First. That it is only by construction that the law can be made to reach a case like this; and that to give to it such construction would be to give to it a retrospective operation, which is inadmissible.
Secondly. That if the law, in plain and unequivocal *742 terms embraced the case, it would be an ex post facto law, inasmuch as it appears that the first conviction was had in Massachusetts in the year 1843, and the law under which it is sought to visit the prisoner with the additional punishment, was not passed till the year 1848 ; and therefore that in either of these aspects the testimony offered would be illegal, even though the charge were formally made in compliance with the construction above mentioned, or in accordance with the plain and obvious requirements of the law.
Thirdly. That the allegation was in no aspect well made, but was altogether defective and faulty! and that the court, on the motion of the prisoner to reject the evidence, should have excluded it, and instructed the jury wholly to disregard said allegation.
As to the first ground, no resort to construction is necessary to show that the terms of the law embrace all cases of a second conviction, whether the first conviction had been had since, or before, the passage of the law. Violence would have to be done to the plain and obvious import of the words employed, in order to restrict the operation of the law to the cases where the first conviction had taken place since its enactment. If a reasonable doubt arose out of the language used in the statute, whether the law contemplated the cases in which the first conviction was had before its passage, the charitable rules which prevail in the construction of such laws would perhaps require us to restrict its operation to those cases alone where the first conviction had taken place since the passage of the law.
But no such doubt arises. To give the law the restricted operation contended for by the prisoner’s counsel, would therefore be, not to construe the statute, but to deny its authority and set at naught its plain requirements. This it is not competent for us to do, unless satisfied that the second ground of objection *743 taken is tenable, to wit, that the statute, so far as it is applicable to the case before us, is unconstitutional as being an ex post facto law.
Is it obnoxious to such objection? The first conviction, as has been before stated, was had in 1843, and the second offence is alleged and found to have been committed in 1852; whilst the law under consideration was passed in 1848 and re-enacted in 1849. Is the increased punishment prescribed .by the statute and to which the prisoner has been sentenced, one which, in legal contemplation, is to be regarded as attached to the first or to the second offence? If to the latter, there is nothing in the statute on which to base the imputation of its being of an ex post facto character in its design or operation. The constitution withholds from the legislature the power to convert, by statute, into a crime, an act, which, at the time it was done, offended against no law; or to visit a criminal act even with penalties more severe than those which were attached to it by the law, when it was committed, bio constitutional or other obstacle however, seems to stand in the way of the legislature’s passing an act declaring that persons thereafter convicted of certain of-fences committed after the passage of the act, may, if shown to have committed like offences before, be subjected to greater punishment than that prescribed for those whose previous course in life does not indicate so great a degree of moral depravity. One convicted under such a statute cannot justly complain that his former transgressions have been brought up in judgment against him. He knew or is presumed to have known, before the commission of the second offence, all the penalties denounced against it; and if in some sense the additional punishment may be said to be a consequence of the first offence, (inasmuch as there could be no sentence for such punishment in the absence of proof of the first conviction,) still it is not a *744 necessary consequence; but one which could only arise 011 ^ie conviction for the second offence, and one there-which being fully apprised of in advance, the offender was left free to brave or avoid.
In Ross’ case, 2 Pick. R. 165, a like question arose before the Supreme court of Massachusetts m construing a statute similar in its features to the one now under consideration. The statute alluded to was passed in 1817, and provided -in substance that where a person had been convicted of a crime punishable by confinement to hard labor, he should, upon conviction of .another ofíence punishable in like manner, be sentenced to a punishment in addition to the one prescribed by the law for such last offence. The second offence for which Ross was convicted, was committed after the passage of the act of 1817, and he had been convicted of a like offence in 1816, before the passage of the act; and the question raised in the Supreme court of Massachusetts was, whether the provision in relation to the additional punishment was not, in that case, ex post facto and retrospective in its operation. It was argued, in behalf of the prisoner, that it was. The statute, it was said, incorporated a conviction of a crime committed before the passing of it, with a conviction after, and subjected the offender to additional punishment. This, it was argued, was retrospective ; for, when the crime was committed before the passing of the statute, the offender could not be apprised of the vengeance in store for him when it should be united with another crime. The court, however, were of opinion that there was nothing objectionable in the law. Parker, C. J., who delivered the opinion of the court, said, that if it could be truly said that the party was punished under the statute for the first offence, the statute would be ex post facto; that a party ought to .know, at the time of committing the offence, the whole extent of the punishment: *745 But he proceeded to show that the punishment was for the last offence committed, and was rendered more severe in consequence of the situation into which the party had previously brought himself; that the punishment was enhanced from the character of the culprit. In the more recent case of Plumbly v. Commonwealth, 2 Metc. R. 413, decided by the same court, Ross’ case is cited with approbation. The court said that in the last mentioned case it was properly held that the law did not impose a second punishment for the first offence ; but imposed a higher punishment on one a second time convicted, because the former punishment had proved inefficacious in doing the work of reform for which it was designed. These views are, we think, correct, and applying them to the case under consideration, we are of opinion that the second ground taken by the prisoner’s counsel cannot avail him.
The third ground remains to be considered.
The allegation in regard to the first conviction does not state when it was had, but charges simply that “ the prisoner hath been convicted of a felony by him committed in the commonwealth of Massachusetts,” &c. It might happen that a person who had committed a first and second offence should be tried and convicted of the second offence before he was tried for the first. If this allegation therefore is properly made, proof of such conviction of the second offence might serve as evidence to justify the infliction of the increased or additional punishment on the offender for his first offence ; for the terms in which the charge is made would be fully satisfied by proof of any conviction of a felony before the exhibition of the indictment, without regard to the time when such felony was committed. The attorney general insists, that if such should be adjudged to be the true meaning and effect of the charge, it would in that respect, be still *746 properly made, and in conformity with the true intent and object of the statute; that the statute is designed to impose increased punishment on those who by a second conviction are proved to be habitual offenders, no matter what may be the order of time in which these offences may have been committed. If this were the first statute of • the kind enacted by our legislature, and we were to be restricted in construing it to a strict and literal interpretation of its language, these views would be entitled to great weight. Many laws of a like nature have however, (as has been already stated,) been previously passed by our legislature ; and on looking at them, we find that in most, if not in all of them, it is required that the offence to be visited with the additional punishment shall have been committed after a conviction for another felony. Thus in the law of 1796, (ch. 200, Code 1803, p. 355,) entitled “ an act to amend the penal laws of the commonwealth,” providing amongst other things, for the establishment of the penitentiary, the punishment of death (except for murder in the first degree,) is abolished in the first section; and in the 24th section it is declared, that “ If any person convicted of any crime, which now is capital, or a felony of death without benefit of clergy, shall commit any stich offence a second time, and shall be thereof legally convicted, he shall be sentenced to undergo an imprisonment in said penitentiary-house, at hard labor during life,” &c. So again, in the 13th section of ch. 171, 1 Rev. Code 619, it is provided, that “If any person guilty of an offence punishable by confinement in the penitentiary, shall have been convicted thereof, &c., and shall after-wards commit any other offence, which by law, if there had been no such previous conviction, would have been punishable with confinement in the penitentiary for a period not less than five years; every such offender being thereof lawfully convicted, shall be punished by confinement in said peniteniary for life.”
*747 Similar language is employed in the 14th and 15th sections of the said last mentioned act. These provisions have been in some respects modified by subsequent enactments; but in none of them passed prior to the act under consideration, is there any such change in the language, in reference to the first and second offences, remembered, as would denote a purpose on the part of the legislature to alter or dispense with the requirement that a conviction for felony should precede the' commission of the offence which is to be visited with the increased punishment.
The decision and reasoning of the Supreme court of New York in the case of The People v. Butler, 3 Cow. R. 347, applies with full force to the case before us. The statute under which the prosecution in that case was had, provides “ that every person who shall hereafter he d second time or oftener convicted of petit larceny, shall be adjudged by the court who may give judgment thereon, to imprisonment in the state prison for anytime not exceeding three years;” and it was contended on the part of the prosecution, that there was nothing in the phraseology of the statute which required the second crime to have been committed after the first conviction; and that the scheme of the law was to enhance the punishment for a series of offences, betraying a hardiness and depravity in guilt, whether the conviction was for the first or the second offence. On the part of the prisoner it was argued in that case, that the statute intended that a conviction should precede the second offence; that the mischief was a want of. reformation by the first punishment, and that the previous conviction was required as evidence that the mild correction for one offence had failed of its effect: that the legislature intended that the culprit should first hear the monitory voice of the law before the heavier doom should be announced; and that the statute was based on the sound maxim, *748 that if gentle means would not avail, the more severe punishment should be'applied.
The court held that the true construction was that contended for on behalf of the prisoner. Savage, C. delivering the opinion of the court, after stating that there had been various laws on the subject, said: “ The statutes providing for the punishment of second offences are worded differently, some of them declaring that every person who shall be a second time duly convicted or attainted of any of the said felonies committed after the said first conviction,” and sometimes, “ shall he a second time or of tener duly convicted or at-tainted.” He then proceeded to express the opinion of the court, that “the difference of phraseology in the several statutes was accidental; that the legislature meant the same thing in all, which was, that a conviction should precede the second offence; and in support of the opinion cites Hawkins, P. C. ch. 40, § 3, where the rule is laid down that “where a statute makes a second offence felony, or subject to a heavier punishment than the first, it is always implied that such second offence ought to be committed after a conviction for the first; for the gentler method shall first be tried which may perhaps prove effectual.”
The departure in the present law from the language heretofore generally adopted in former laws has not, we think, originated in any design to change this rule. On the contrary, we think it obvious that the present provisions are designed to carry out the policy hitherto apparent in our legislation, and to modify the law in this respect only so far as to make it embrace also the cases where the first convictions are had in other states.,
With these views of the law, we think that the allegation or charge in question is not only defective in failing to set out the time and place of the first conviction, but is also faulty in this, that, under it as it now stands, a case which is not contemplated by the provisions of the law would satisfy the terms of the charge.
*749 Is this defect cured by the verdict ?
In Kirk’s case, 9 Leigh 627, decided by the General court in 1838, it was held that the defect in some of the counts of the indictment did not affect the validity of the rest; and that if any count was good, judgment might be given against the accused. The court said, (I use the language of Judge Allen, who delivered the opinion,) that every separate count was in the nature of a distinct indictment; and though in civil actions before the law was changed by statute, when the declaration contained several counts, some of which were good and others defective, and the jury gave entire damages, judgment could not be given, this rule did not apply to criminal cases. “ The defect of some of the counts (he said) did not affect the validity of the rest, and if any count was good judgment might be given. The prisoner is not subjected to any inconvenience or liable to be taken by surprise by the operation of the rule. He is apprised by the indictment of the charges against him, and should be prepared to meet them ; and if upon the trial he supposes that the evidence does not justify a conviction upon any of the counts, he can save the point by spreading the facts proved upon the record, and moving in arrest of judgment or for a new trial.”
In Mowbray’s case, 11 Leigh 643, decided in 1841, the same question was again before the General court, and a majority held that the rule of practice in criminal cases, that if an indictment contains several counts, some good and others faulty, and a general verdict of guilty be found, the bad counts will not affect the good, and judgment will be given on the latter, does not apply in Virginia to cases of penitentiary crimes; inasmuch as the jury is required not only to pass on the guilt of the accused, but also to ascertain the amount of the punishment; and the evidence on the bad counts may aggravate the punishment imposed by the *750 verdict. This case was followed by that of Clerk, 3 Gratt. 615, decided in 1846, in which it was held by the whole court that the common law rule that a good count in the indictment where there are other counts which are bad, will support a general verdict of guilty, is overruled in Virginia, as to offences which are punishable by confinement in the penitentiary. In this state of the law the act to reduce into one the several acts concerning crimes and punishments and proceedings in criminal cases, was passed March 14th, 1848. The 43d section of chapter 21 declares, that “ a general verdict of guilty upon an indictment or information containing several counts, one or more of which is faulty, shall be good, and judgment shall be entered thereupon accordingly. But the accused on the trial may apply to the court to instruct the jury to disregard the faulty counts; and it shall be the duty of the court to give such instruction.” This provision, with some slight changes in the phraseology, which it is not deemed necessary to notice, as they are not supposed to change the meaning of the law, is carried into the Code of 1849, and forms the 34th section of chap. 208, p. 778. We do not deem it necessary to express any opinion as to how far the questions decided in the cases just mentioned are affected by this provision, farther than to say that one of its manifest designs is to furnish a prisoner arraigned on an indictment containing various counts, some of which are faulty, a means of protecting himself against any prejudice or injury that might arise from such faulty counts, to wit, by a motion, on his trial, to the court, to instruct the jury to disregard them; and that if the court should refuse, to the prejudice of the prisoner, to give such instruction, it would be an error which he would have a right to have redressed by an appeal.
Has such a motion been made by the prisoner and overruled by the court in this case ? It is insisted by *751 his counsel that there has been; that the motion by the prisoner to exclude the record of the conviction in Massachusetts and the testimony of the witness as to the prisoner’s identity, vpas, though not in terms, in substance and effect, a motion to the court to instruct the jury to disregard that portion of the indictment alleging such conviction. And in this position we think he is correct. In a case like this, when it is manifest that the only purpose for which such evidence could be introduced was to sustain the charge in relation to the former conviction, and the proofs offered .constituted all the items of evidence essential to establish the charge, to wit, the record of the conviction and proof of the identity of the prisoner, the exclusion of the evidence would have been equivalent to striking out the charge, or instructing the jury wholly to disregard it. We have a similar law applicable to the proceedings in civil cases, and in the case of Cooke v. Thornton, 6 Rand. 8, it was held by a majority of the court, that a defendant going to trial on a declaration containing several counts, some good and others bad, might avail himself of the course pursued by the prisoner here. Judge Green said: “This court, in Roe v. Crutchfield, 1 Hen. & Munf. 361, adopted the rule laid down in the Duke of Bedford v. Alcocke, and declared that the defendant might still avail himself of the objection to the bad counts by moving the court to instruct the jury to disregard them, or by demurring to the evidence, or objecting to the evidence applicable only to the faulty counts, and taking an exception if it be admitted, so as to show that the evidence was only applicable to the bad counts. Such a motion to exclude the evidence would be in effect a motion to declare the counts to be bad and to be disregarded by the jury ; for in any other view, to exclude evidence proper to support the matter put in issue by the pleadings, would be utterly inadmissible.”
The reasoning as applicable to the case before us, *752 does not seem to admit of answer, and we think that the judge of the Circuit court ought to have excluded this evidence and instructed the jury to disregard the allegation or charge in question. Some discussion was had at the bar as to whether this allegation ought properly to be regarded as a part of the third count or as a distinct charge attached to no one count more than another. We do not regard the decision of this question as material. The allegation is so made that it might have been disregarded or stricken out of the indictment without affecting the other portions. The four counts in which the acts of burglary and larceny are charged would still have remained regular, formal counts.
What is to be the effect of this error of the court ? On the one hand it is argued by the attorney general, that it should only affect so much of the judgment as relates to the additional punishment; and on the other hand it is insisted by the prisoner’s counsel, that it is cause for reversing the whole judgment, and remanding the case for a new trial. We can hardly say that the introduction of the evidence objected to was not calculated to prejudice the prisoner on the trial of the felony for which he was arraigned. In England they have statutes very similar to ours, prescribing additional punishment for second offences; and a practice prevailed, though not without the earnest opposition of some of the judges, of giving the evidence of the former conviction to the jury before they had passed on the guilt of the accused on the charge for the felony for which he was arraigned. In the case of Rex v. William Jones, 25 Eng. C. L. R. 453, Park, Judge, said: “That his custom had been never to allow the jury to know anything of the previous conviction till they had given their opinion on the charge upon which the prisoner was to be tried; because he thought that if the jury were aware of the *753 previous conviction it was (to use a common expression) like trying a man with a rope about his neck. He proceeded to say, however, that the judges had had a meeting at which thirteen of them were present, and théy held that his practice and that of another learned judge was wrong ■; and that the opinion of the judges was the previous conviction must be proved before the prisoner is called on for his defence. Arch-bold, in his Criminal Pleadings 823, says that in practice it was found that a prejudice was created in the minds of the jurors by a knowledge of the previous conviction, and that to remedy this the statute 6 and 7 Wm. 4, ch. 111, was passed. And that in pursuance of its provisions the practice now prevailing requires that the prisoner must be arraigned and the jury must be charged and the evidence proceed as if the indictment did not contain the averment of a previous conviction ; and that this allegation must not be opened to the jury, or their verdict taken upon it, until after they have found the prisoner guilty of the subsequent felony; and then the prosecution must prove the previous conviction and identity of the defendant, and upon it likewise the jury must deliver their verdict. If, however, the defendant call witnesses to character, the previous conviction may be proved in reply, and the compound question will in that case be left to the jury in the first instance.
It was said by the attorney general that we have no such statute here as that just alluded to, and that it is the practice in our courts for the jurors to hear and pass upon the evidence in relation to the former conviction at the same time with that offered to prove the felony of which the prisoner is arraigned; and therefore, that the prisoner has been subjected to nothing which would not have been regular, if the allegation of the former conviction had been properly made. We do not think that the arguments of the prisoner, *754 founded on the supposed probable injuries done to him by the course pursued, can be met by-the answer that if the proceedings had been regular such injury would have been sanctioned by the law and rendered irremediable. The statute and the practice under it cannot be made to legalize such injury, when the requirements necessary to be pursued in order to silence the complaints of the prisoner and constrain his submission, have not been observed.
In the case of The Commonwealth v. Briggs, 7 Pick. R. 177, the accused was charged with crime, and in the same indictment it was alleged that he had before been convicted of the like offence. The record of the first conviction was laid before the jury, who, without any proof of identity, found a general verdict, upon which judgment was rendered by the court below. In the Supreme court, notwithstanding the attorney general on motion entered a nolle prosequi of so much of the indictment as related to the former conviction, so that the sentence of punishment might be the same as if that allegation had been omitted by the grand jury, the judgment was reversed and verdict set aside, and a new trial awarded. The court said it was true that because of the nolle prosequi the prisoner could not be punished more than if the charge respecting the former offence had been left out of the indictment; yet that the jury, assuming it as a fact that he had been before convicted, might and probably did consider that as tending to prove or render it more probable that he had committed the new offence ; that a jury in such a case might suppose, from the way in which the record was laid before them, that it was plenary evidence of the former conviction of the defendant, though it was in fact deficient'in an essential particular; and that having a convict on trial for an offence of a like nature, they might be satisfied with less evidence on the principal charge than they would require in the absence of proof of previous guilt.
*755 Having decided that' the Circuit court erred in refusing to exclude the evidence objected to, a new trial seeins to us to follow as the proper consequence. What influence the evidence may have had in deciding the question of the guilt or innocence of the prisoner of the charges of burglary and larceny, for which he was on his trial, no one can say. But it is not difficult to believe that, in a case of doubtful or conflicting evidence, such proofs might exert an influence on the minds of his triers prejudicial to the cause of the prisoner. And we think the error in permitting the evidence to go to the jury cannot be regarded as cured by the statement which it appears was made by the judge to the jury, that the records were admitted and were to be received for the sole purpose of showing that the prisoner had been previously convicted of a felony. Such a caution, though highly proper and calculated to guard the jury against yielding to any improper bias, could not wholly remove the unfavorable impressions which the introduction of the evidence must, most probably, have made on their minds. The allegation of the first conviction being faulty, the prisoner had the right to stand before his triers in the same plight as if such allegation had never been made. And if, upon his trial on an indictment containing no such charge, evidence such as that objected to had been introduced, there can be no doubt that its introduction would have been an error entitling the prisoner to a new trial. We think he is not the less entitled to it in the case as it stands.
Judgment reversed.